IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| LAGUARDIA ASSOCIATES, L.P. ET AL | : | CASE NO. 04-34512 |
| | : | |
| DEBTORS | : | CHAPTER 11 |

# OPINION

By:  STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

LodgeNet Entertainment Corporation (LodgeNet) has filed a Motion for Turnover of Trust Funds, to Compel Assumption or Rejection of an Executory Contract, for Payment of Administrative Expenses, and for Relief from Stay.  Debtors oppose the motion.  After a hearing was held on April 7, 2005, the matter was taken under advisement.  For the reasons set forth below, the Motion will be denied.

*Factual Background*

The parties stipulated that LodgeNet provides the Debtors with pay per view services in its hotel rooms; that the fee which the Debtors charge a guest for such service appears separately on the guest's bill at checkout; that Debtors remit such fees to LodgeNet as required by the contract; and that LodgeNet is owed roughly $37,000[1] in prepetition fees.[2]  Despite the timing of this debt, LodgeNet maintains that it may collect

---

[1]Trans. 3.

[2]At the hearing, LodgeNet stated that postpetition charges (excepting the current bill) had been paid.  Trans. 3.  Because its motion for relief from stay is premised on a failure to make postpetition payments (Motion, ¶¶ 55-56), that admission moots that request.  It also moots LodgeNet's administrative payment request .

that debt now because the proceeds were to be held in trust for it.  Debtors dispute any such claim and maintains that they and LodgeNet had nothing more than a debtor-creditor relationship.

*Turnover of Trust Funds*

LodgeNet's right to immediate payment of the prepetition fees turns on whether such fees belong to it and are, therefore, excluded from this bankruptcy estate.  Section 541(a)(1) of the Bankruptcy Code provides that upon the filing of a bankruptcy petition, an estate is created which consists of "all legal and equitable interests of the debtor in property as of the commencement of the case" except as provided in section 541(b) and section 541(c)(2). 11 U.S.C. § 541(a).  Subsection 541(d) limits from the estate interests in which the debtor holds only a legal and not an equitable interest in property:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest … becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).  The leading bankruptcy commentator explains this provision:

> Subsection (d) re-emphasizes the provision of section 541(a)(1) that the estate is to be comprised of all legal or equitable interests of the debtor in property as of [the] commencement of the case. It also reiterates the general principle that an interest that is limited in the hands of the debtor is equally limited in the hands of the estate, and therefore, where the debtor holds bare legal title without any equitable interest, the estate acquires bare legal title without any equitable interest in the property.

5 *Collier on Bankruptcy* ¶ 541.27 (Matthew Bender 15th Ed. rev. 2001).

Section 541(d) describes a typical trust situation: a trustee holds bare legal title to

2

property for the benefit of one or more beneficiaries who hold the equitable title or interest in the trust property. *See Official Comm. of Unsecured Creditors v. Columbia Gas Systems Inc. (In re Columbia Gas Systems Inc.)*, 997 F.2d 1039, 1059 (3d Cir.1993). Where the debtor's interest in property is limited to that of trustee, no other interest (including, the beneficiary's equitable interest) in that property becomes part of the estate. *Id*; *see also In re Marrs-Winn Co.*, 103 F.3d 584, 589 (7th Cir. 1990) ("The Bankruptcy Court's jurisdiction over the debtor's property extends only as far as debtors interest in the property. Accordingly, the Bankruptcy Code embraces the crucial distinction between a legal interest and an equitable interest in property.")

*Determining the Applicable Law*

The parties appear to agree that New York Law controls on the question of whether a trust exists here; LodgeNet relies on a choice of law provision in the contract. LodgeNet Brief, 2. For its part, Debtors agree that such is the case. Debtor's Brief, 2. Are the parties correct that New York law necessarily applies or is there federal common law applicable here?

The Third Circuit has explained how § 541(d) is to be applied:

> It is axiomatic that federal law governs questions involving the interpretation of a federal statute. *See Kamen v. Kemper Fin. Services*, 500 U.S. 90, ----, 111 S.Ct. 1711, 1717, 114 L.Ed.2d 152 (1991). Therefore, it is clear, and the parties do not dispute, that federal law defines the parameters of section 541(d) of the Bankruptcy Code. This, however, is only the beginning of the inquiry. The determination that federal law applies does not inevitably require the application of a uniform federal rule. Applying federal law, courts may either fashion a uniform federal common law rule or adopt state law as the federal rule of decision. *See id.; United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 727-28, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979).

> In *Kimbell Foods*, the Supreme Court outlined the analysis that determines whether uniform federal common law or state law should apply. The determination depends on the nature and importance of the government interest at issue and the effect of applying state law. *Kimbell Foods*, 440 U.S. at 727-28, 99 S.Ct. at 1458. To decide whether a national federal rule is necessary, courts should consider: (1) the need for a nationally uniform law; (2) whether incorporation of state law would frustrate specific objectives of the federal program at issue; and (3) the extent to which application of a federal common law rule would upset commercial expectations that state law would govern. *See id.* at 728-29, 99 S.Ct. at 1458-59; *Adams v. Madison Realty & Dev. Inc.*, 937 F.2d 845, 856 (3d Cir.1991). Developing a federal common law rule is the exception rather than the rule. Federal law should coincide with the relevant state law unless state law would undermine the objectives of the federal statutory scheme and there is a distinct need for nationwide legal standards. *See Kimbell Foods*, 440 U.S. at 728, 99 S.Ct. at 1458.

*Columbia Gas*, 997 F.2d at 1055.

Whether the pay per view charges are held in trust for LodgeNet, and therefore excluded from the estate, does not implicate an important federal interest such as to warrant the application of federal common law. There is no need for uniformity here; the proceeds were not created by federal statute, but rather by contract between private parties.

Second, applying New York law of trusts frustrates no specific federal purpose. The sole federal statute involved here is Bankruptcy Code § 541(d). Both that statute and the New York law regarding trusts are congruent: each recognizes the difference between legal and equitable title.

Finally, applying federal common law would, in fact, upset commercial expectations of the parties that state law would govern. The contract specifically

4

provides that New York law governs the instrument's interpretation.  As there is no federally created interest in the parties arrangement, they would not expect federal law to supplant the law of the jurisdiction which they chose as controlling.  In sum, the parties operate from the correct premise in debating whether the relationship constitutes an express trust as defined by New York law.

*The Law of Express*
*Trusts in New York*

Although it never uses the precise term in its brief, LodgeNet asserts the existence of the four elements of an *express* trust: a trustee, a beneficiary, a trust *res* or corpus, and delivery of the *res.*  LodgeNet Brief, 3.  Under New York law, "an express trust is 'a fiduciary relationship with respect to property, subjecting the person by whom the title to property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.' " *LFD Operating, Inc. v. Ames Dep't Stores, Inc. (In re Ames Dep't Stores, Inc.)*, 274 B.R. 600, 623 (Bankr.S.D.N.Y.2002) (*quoting* Restatement (Second) of Trusts § 2 (1959)), *aff'd*, 2004 WL 1948754 (S.D.N.Y.2004).  An express trust requires (i) a designated beneficiary; (ii) a designated trustee who is not the beneficiary; (iii) a fund or other property sufficiently designated or identified to enable title thereto to pass to the trustee; and (iv) the actual delivery or legal assignment of the fund or other property to the trustee with the intention of passing legal title to him or her as trustee.  *In re Ames Dep't Stores, Inc.*, 274 B.R. at 623; *accord In re State Street Assoc. LP*, 2005 WL 887151 *8 (Bankr.N.D.N.Y.).

When, as here, property of the estate is alleged to be held in trust, the burden

rests upon the claimant to establish the original trust relationship. 5 *Collier on Bankruptcy* ¶ 541.11. LodgeNet's claim that a trust exists is based on specific language in the parties' contract. *See* Motion ¶ 15. Specifically, the contract provides that the pay per view charges and collections "shall be held in trust for the benefit of LodgeNet." Contract, ¶ 6.1. And on a monthly basis the hotels are required to provide a "statement of the LodgeNet funds held in trust" by them. *Id.* ¶ 7.2. From this, LodgeNet would have the Court find that Debtors are the trustee, that LodgeNet is its beneficiary, that the prepetition fees collected are the *res*, and that such fees were collected and delivered to the Debtors *qua* trustee each time a hotel guest settled its bill. LodgeNet Brief, 2. That – contract language and nothing else – is the evidentiary basis for LodgeNet's contention that a trust relationship exists between the parties.

While the terms of any agreement are probative on the question of trust status, they do not clinch the matter. As the Second Circuit has explained:

> [I]f a ritualistic incantation of trust language were deemed conclusive where third-party interests are at stake in a bankruptcy case, it would be a simple matter for one creditor, at the expense of others, to circumvent the rules pertaining to the creation of bona fide security interests.

*In re Morales Travel Agency*, 667 F.2d 1069, 1072 (2d Cir.1981). Therefore, this court will interpret the parties' relationship in the context of the substance of that relationship, not limiting the analysis to the form of the contract to determine the true relationship between them. *Ames Department Stores*, 274 B.R at 616.

The Debtors do not specifically state which element of an express trust is absent here. Instead they emphasize that the contract does not require segregation of the pay per view proceeds. And because the proceeds were deposited into the Debtors'

6

general operating accounts,[3] that necessarily means that such proceeds were commingled with other funds. Debtors' Brief, 3. Implicitly, then, the Debtors dispute that a trust *res*, or corpus, was ever established. The importance of such a circumstance was pointed out by the Court in *Ames*:

> It is firmly established that if a recipient of funds is not prohibited from using the funds as his own and the recipient is not prohibited from commingling the funds with his own monies, a debtor-creditor relationship, not a trust relationship, exists. *Dampskibsselskab Af 1912 Aktieselskab v. Black & Geddes, Inc. (In re Black & Geddes)*, 35 B.R. 830, 836 (Bankr.S.D.N.Y.1984); *accord Koreag, Controle et Revision S.A. v. Refco F/X Assocs., Inc. (In re Koreag, Controle et Revision S.A.)*, 961 F.2d 341, 353 (2d Cir.1992) (stating same in discussing elements of a constructive trust); *see also Foothill Capital Corp. v. Clare's Food Mkt., Inc. (In re Coupon Clearing Serv., Inc.),* 113 F.3d 1091, 1101 (9th Cir.1997) (finding better guidance in a series of cases that do not find a trust where commingling of funds and payment out of general funds is sufficient); *Superintendent of Ins. v. First Cent. Fin. Corp. (In re First Cent. Fin. Corp.)*, 269 B.R. 481, 495 (Bankr.E.D.N.Y.2001) (observing that the segregation of alleged trust funds is a factor that courts consider in distinguishing a trust and a debt in bankruptcy); *In re Einhorn*, 59 B.R. 179, 184 (Bankr.E.D.N.Y.1986) (finding that crucial factor in determining whether a trust relationship is created is the duty to segregate funds); *Leased Pet Dep'ts, Inc. v. Cook United, Inc. (In re Cook United, Inc.)*, 50 B.R. 559, 561 (Bankr.N.D.Ohio 1985) (finding that an alleged trustee that commingles funds does not create a trust in a department store context). These cases are consistent with a trustee's duty to the beneficiary to keep trust property separate from the trustee's individual property. *See Restatement of Trusts* §§ 179; 179 cmt. b; 180 cmt. c.
>
> In New York, if there is no distinct trust fund but merely a general obligation to ultimately pay a sum of money, then there is no trust, but only a debt. *See Petition of Travers*, 32

---

[3]This is something the parties stipulated to. *See* LodgeNet Brief, 2, n.2.

> N.Y.S.2d 742, 743, 177 Misc. 1044, 1046 (Sup.Ct. Kings Co.1941); *see also Warner-Quinlan*, 86 F.2d at 104 ("If there was no contractual duty to remit the proceeds of sale but payment out of [debtor's] general funds was sufficient, an extension of credit [and not a trust] would be established.").

274 B.R. at 623-24.    And that would prove fatal to the creditor's claim that funds held by the debtor in the amount of its receivable were impressed with a trust:

> Here, Ames has commingled the Net Sales Proceeds with all other proceeds from its stores since 1987. It is undisputed that the Agreement contained no provision that required that Ames place the Net Sales Proceeds in a segregated bank account. …Through Ames's cash management system, Ames used the proceeds from the sale of LFD merchandise to pay its Secured Lenders by placing those funds in the Blocked Accounts that were swept by GECC. Ames paid LFD out of general funds made available by GECC in Ames's Disbursement Account. The funds made available in Ames's Disbursement Account are not the same monies from the sale of LFD merchandise. Ames's Disbursement Account is a blocked account funded exclusively through advances provided by GECC. Therefore, the Court finds that Ames did not hold the Net Sales Proceeds in trust for LFD because Ames, at all relevant times, has commingled the Net Sales Proceeds and used the funds between settlement dates for purposes other than paying LFD, before making payment to LFD out of general funds provided by GECC. These facts are dispositive of LFD's trust claim. Hence, the Court finds that the parties never manifested an intent to create a true trust mechanism and therefore Ames was not a fiduciary to LFD.

274 B.R. at 624.

Despite what appears to be the law on this point, LodgeNet disputes the significance of commingling.  Its cites as authority for the contrary position *People v. Valenza*, 436 N.Y.S.2d 937 (1981) (holding that while a prohibition against commingling is a fiduciary duty and generally accepted feature of trusts, it is not an essential element).  That case, however, is simply at odds with the clear weight of authority cited

above from *Ames*. And its premise is dubious: the failure to segregate funds inherently applies to the third element of a trust: the establishment of a trust corpus or res. On this record, then, LodgeNet has failed to prove that the proceeds from prepetition pay per view sales are held in an express trust by the Debtors for LodgeNet's benefit.

*Are the Proceeds Impressed*
*With a Constructive Trust?*

While commingling appears irreconcilable with an express trust, that is not necessarily the case with constructive trusts. And because LodgeNet never specifies exactly what type of trust it asserts to exist here, the record must be examined to see if a constructive trust is supported. This is a matter of federal common law. *See In re Edison Bros., Inc.*, 243 B.R. 231, 235 (Bankr.D.Del. 2000) ("The Third Circuit has clearly stated that because of [the Supreme Court's decision in] *Kimbell Foods*, state law of constructive trusts must be displaced by a federal common law in cases under section 541(d) [where the state law diverges].") (*citing Columbia Gas*, 997 F.2d at 1056)  The Third Circuit recalled in *Columbia Gas* that it had previously imposed an implied trust on funds held by a bankruptcy debtor for another entity:

> *Penn Central*[4] held that a trust relationship exists when the parties manifest an intention to create a trust. [citation omitted]. The parties, however, need not employ any talismanic language – "failure to expressly designate the relationship as one of trust does not necessarily negate its existence." [citation omitted]  Absent a document definitively establishing a trust relationship, we look to the language of the parties, their conduct, and other circumstances surrounding the transaction probative of their intent.

997 F.2d at 1060. What does the record show as to the parties' intent?

---

[4]486 F.2d 519 (3d Cir. 1973)

9

In this case, the contract between the parties states that the sales proceeds are to be held in trust. Contract, ¶ 6.1. But aside from that, the conduct of the parties is more akin to an arms length transaction. This becomes apparent if we compare this case to *Penn Central* and *Columbia Gas*, cases in which a constructive trust was found notwithstanding commingling.

*The Significance*
*of Commingling*

In *Penn Central*, railroads that shipped goods traveled over railroad tracks owned by many different railways. 486 F.2d at 521. To facilitate operations, the shipping railroad collected the entire charge from the customer, a portion of which it owed to the other railways whose tracks had been utilized. *Id.* The railroad industry voluntarily created a complex system of accounting for these interline revenues and settled the balances in each interline account monthly. *Id.* Usually, the commingling of trust funds with general revenues also indicates a debtor-creditor relationship. The *Penn Central* court found, however, that the "[c]ommingling of monies has minimal significance in the extraordinary operations of interline railroads." *Id.* at 524. Because it would be highly inefficient to segregate the numerous collections railroads received, little weight was accorded to this factor. Id. at 525

Similarly, in *Columbia Gas*, the debtor was a natural gas middleman who purchased natural gas from suppliers and resold it to local companies. 997 F.2d at 1051. After the Federal Energy Regulatory Commission determined that gas companies had been overcharging the public in violation of federal law, it ordered refunds from the gas companies to consumers. *Id.* at 1053. Those refunds would have

to flow through the debtor to its customers. The debtor and various consumer groups sought to exclude the refunds from the debtor's estate as trust funds. The creditors committees opposed that. In finding that the refunds were held in trust for consumers, the court found that even though the debtor did not maintain separate cash accounts for customers, it did, however, meticulously track its refund obligations by maintaining over one hundred separate paper accounts. *Id.* at 1061. It concurred with the bankruptcy court which had found that segregating the numerous refunds would be a huge administrative burden and economically inefficient. *Id.* Therefore, as in *Penn Central*, the debtor's commingling of trust funds and general revenues had little significance concerning whether the refunds are held in trust. *Id.*

The same cannot be said here. The record does not show that it would have been administratively burdensome for the Debtors to have created a separate account for pay per view proceeds or that it had many similarly situated vendors. Indeed, if it meant that much to LodgeNet, then it could easily have ensured early on in their relationship that a separate account be created for it. That was never done. Here, the failure to segregate proceeds is probative of a lack of intent to create a trust.

*Did the Contract
Provide for Interest?*

Another indicia of a trust emphasized in *Penn Central* was the absence of any provision for the payment of interest. 486 F.2d at 524. One party permitting another to use its money for a period of time in exchange for the payment of interest is the hallmark of a debtor-creditor relationship. *Id.* Therefore, the absence of interest payments supported a finding of a trust.

11

In this case, the contract specifically provides for interest.  *See* Contract, ¶ 7.3 ("Payments not received by the due date shall bear interest at a rate equal to the lesser of 1.5% per month or the maximum rate allowed by law.") That is an indication of a debtor-creditor relationship.  Like the commingling, the charging of interest indicates that the parties indicates that the parties never intended a trust relationship.

*The Motion to Compel*
*Assumption or Rejection*

LodgeNet requests an Order compelling the Debtors to either assume or reject its contract.[5]  It relies in this regard on § 365(d)(2) of the Code:

> In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan *but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease*.

11 U.S.C. § 365(d)(2) (emphasis added).  The party moving for an order of compulsion bears the burden of proof.  *See In re Mayer Pollock Steel Corp.*, 157 B.R. 952, 964 (Bankr.E.D.Pa.1993).  This requires evidence as to "the nature of the interests at stake, the balance of hurt to the litigants, the good to be achieved, and the safeguards afforded those litigants." *Id.* at 965 *quoting In re Lionel Corp.*, 23 B.R. 224, 225 (Bankr.S.D.N.Y.1982).  The setting of a "a specified period of time" within which the debtor or trustee must decide to assume or reject has been understood to mean a "reasonable" amount of time.  3 *Collier*, ¶365.04[2][b].  "[Courts] should interpret

---

[5]The parties appear to agree that the contract at issue is executory.

reasonable time consistent with the broad purpose of Chapter 11, which is 'to permit [the] successful rehabilitation of debtors.' " *In re Dunes Casino Hotel*, 63 B.R. 939, 949 (D.N.J.1986) (*quoting NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 527, 104 S.Ct. 1188, 1196, 79 L.Ed.2d 482 (1984)).  Of course, it is within the court's discretion, after weighing these considerations, to deny the motion and allow the debtor to wait until confirmation to decide whether to assume or reject.  *Mayer Pollock*, 157 B.R at 965.

LodgeNet maintains that it is "entitled to an order requiring the Debtors to assume or reject its executory contract by a date certain." Motion, ¶ 48.  Yet it has offered no evidence to demonstrate that.  All that the record reflects is that LodgeNet is owed a $37,000 prepetition receivable; that is the extent of its exposure.  The Debtors have been paying LodgeNet currently postpetition so it is hard to see what additional harm it is sustaining going forward.  If that were to change, then this Court could reconsider LodgeNet's request and could do so on an expedited basis.  Until then, there are no evidentiary grounds for this Court to require Debtors to make a final decision regarding this vendor.

*Summary*

Neither of LodgeNet's remaining requests is supported by the record.  There is insufficient evidence to find the existence of a trust relationship.  Likewise, LodgeNet offers no reasons for compelling the Debtors to accept or reject its contract at this juncture. LodgeNet's outstanding requests for relief will accordingly be denied.

An appropriate order follows.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated:  May 5, 2005

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| LAGUARDIA ASSOCIATES, L.P. ET AL | : | CASE NO. 04-34512 |
| | : | |
| DEBTORS | : | CHAPTER 11 |

# ORDER

AND NOW upon consideration of the Motion of LodgeNet Entertainment Corporation for Turnover of Trust Funds, to Compel Assumption or Rejection of an Executory Contract, for Payment of Administrative Expenses, for Relief from Stay, the Debtors' opposition thereto, after a hearing held on April 7, 2005, and for the reasons stated in the foregoing Opinion, it is

ORDERED that the Motion is Denied.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated:   May 5, 2005

**MAILING LIST:**

George Conway, Esquire
Office Of The U.S. Trustee
950W Curtis Center
7th & Sansom Streets
Philadelphia PA  19106

Martin J. Weis, Esquire
DILWORTH PAXSON, LLP
1735 Market Street, Suite 3200
Philadelphia, PA 19103

William J. Levant, Esquire
KAPLIN STEWART MELOFF REITER
& STEIN, P.C.
350 Sentry Parkway, Bldg 640
P.O. Box 3037
Blue Bell, PA 19422

Ashley Chan, Esquire
HANGLEY ARONCHICK
SEGAL & PUDLIN
One Logan Square, 27th Floor
Philadelphia, PA 19103